**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**TAD DONEGAL WALKER**                                                                    **PETITIONER**
**Reg #07297-029**

**VS.**                              **CASE NO.: 2:14CV00026 KGB/BD**

**C.V. RIVERA, Warden,**
**Federal Correctional Complex,**
**Forrest City, Arkansas**                                                                **RESPONDENT**

## RECOMMENDED DISPOSITION

**I**.      **Procedure for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Judge
Kristine G. Baker.  A party to this suit may file written objections with the Clerk of Court
within fourteen (14) days of filing of the Recommendation.  Objections must be specific
and must include the factual or legal basis for the objection.  An objection to a factual
finding must identify the finding of fact believed to be wrong and describe the evidence
that supports that belief.

By not objecting, any right to appeal questions of fact may be jeopardized.  And, if
no objections are filed, Judge Baker can adopt this Recommendation without
independently reviewing the record.

II.    **Introduction**

Petitioner Tad Donegal Walker is currently serving a 120-month sentence at the Federal Correctional Complex, Forrest City, Arkansas.[1]  Mr. Walker challenges the manner in which the Bureau of Prisons ("BOP") has calculated his sentence.  (Docket entry #1)  Specifically, he argues that he is entitled to custody credit on his federal sentence for time he served on an Iowa state sentence.  (#1, p. 7)  Respondent, Warden C.V. Rivera, originally argued that the BOP had correctly calculated Mr. Walker's sentence.[2]  (#5)

At the Court's request, Mr. Walker filed a reply (#14) to address questions that remained after the Court had reviewed the record.  (#13)  The primary issue concerned whether Mr. Walker requested, and the BOP considered, a *nunc pro tunc* designation. Warden Rivera filed a response to the reply confirming that he reviewed a request for *nunc pro tunc* designation.  (#17)  Warden Rivera, however, failed to provide basic documentation normally associated with a *nunc pro tunc* designation review. Accordingly, the Court gave Warden Rivera an opportunity to support his assertion with documentation.  (#18)  Instead of providing supporting documentation, Warden Rivera provided a copy of BOP Program Statement 5160.05.  (#19)

---

[1] After recalculation, Mr. Walker's effective term is 112 months and 20 days. (#28-1, p. 3)

[2] Warden Rivera has now provided two recalculations of Mr. Walker's sentence. (#24 and #28)

The Court again noted the lack of documentation in the record and ordered Warden Rivera to send a letter to the sentencing court as provided in Program Statement 5160.05, or identify witnesses for an evidentiary hearing.  (#20)  Warden Rivera sent a letter to the sentencing court.  (#21-1)  The sentencing judge responded to the letter and confirmed some of Mr. Walker's assertions.  (#24-1)  The BOP then recalculated Mr. Walker's sentence.  (#24-2)

Subsequently, the Court gave Mr. Walker an opportunity to address the recalculation.  (#25)  Mr. Walker disagreed with the recalculation and provided a letter his trial attorney had sent to the sentencing judge.  (#26)  The sentencing judge then sent the parties a letter confirming essentially all of Mr. Walker's arguments for habeas relief.  (#27, p. 3)  Warden Rivera filed a reply, with yet another recalculation.  (#28)

The Court gave Mr. Walker an opportunity to address the second recalculation.  (#29)  Mr. Walker again disagreed and alleged that the recalculation resulted in the forfeiture of 30 days of good conduct time.  (#30)  Warden Rivera has not addressed this argument.

Good conduct time was not an issue at any point of this proceeding until the BOP's second recalculation.  It appears clear that Mr. Walker has not given the BOP an opportunity to address his good conduct time claim before raising it here.  Accordingly, this issue is not ripe for review.

3

Mr. Walker requested credit for time spent in Iowa state custody from October 28, 2010, to January 18, 2011; from January 26, 2011, to September 12, 2011; and from October 6, 2011, to November 2, 2011.  (#1, pp. 7, 10-14, 19-22)  The BOP's second recalculation applies all of the custody credit Mr. Walker requested in his petition.

Warden Rivera provided only a computerized printout showing the second recalculation, and a comment that he had recalculated Mr. Walker's sentence "in accordance with USSG § 5G1.3."  (#28)  This vague response fails to show exactly how the BOP recalculated Mr. Walker's sentence.  What is clear, however, is that the BOP has credited Mr. Walker's sentence for all of the time he was in custody.

For the following reasons, the District Judge should DENY Mr. Walker's petition, as moot.  The BOP has now commenced Mr. Walker's sentence on the date of imposition, August 29, 2011.  The BOP has also given Mr. Walker custody credit for time served beginning October 28, 2010, and continuing until the sentence commencement date.  For that reason, Judge Baker should decline to address Mr. Walker's new good conduct credit argument at this time.

## III.  <u>Background</u>

On October 28, 2010, authorities in Story County, Iowa arrested Mr. Walker on charges of eluding and forgery.  (#5, ¶1)  On January 12, 2011, Mr. Walker appeared in the Iowa District Court for Story County, Iowa, where he received a two-year state

sentence.  (#5, ¶2; #5-1, pp. 9-10, 12-13)  At the time, Mr. Walker also faced federal drug charges.

On January 26, 2011, the United States Marshal Service ("USMS") obtained custody of Mr. Walker through a writ of habeas corpus *ad prosequendum*.  (#5, ¶3; #5-1, p. 16)  On August 29, 2011, the Southern District of Iowa sentenced Mr. Walker to a 120 months' incarceration in the BOP.  (#5, ¶4; #5-1, pp. 18-23)  See *United States v. Walker*, 4:10CR107 JAJ-RAW (S.D. Iowa, sentenced Aug. 29, 2011).  The USMS returned Mr. Walker to Iowa state authorities on September 12, 2011. (#5, ¶5; #5-1, p. 16)  Mr. Walker's federal judgment was filed with state authorities as a detainer. (#5, ¶5; #5-1, p. 25)

Iowa state authorities released Mr. Walker to USMS custody at the expiration of his state sentence on October 6, 2011.  (#1, p. 20; #5, ¶6; #5-1, p. 16)  The BOP originally commenced Mr. Walker's federal sentence the same day, October 6, 2011.  (#5-1, p. 28)  The BOP did not give Mr. Walker any prior custody credit toward his federal sentence. (#5-1, p. 28)

In his petition, Mr. Walker sought custody credit toward his federal sentence for the time spent in custody after his October 28, 2010 arrest.  He had several avenues to receive credit on his federal sentence for the time in question: (1) through the date of commencement of his federal sentence; (2) through a *nunc pro tunc* designation; (3)

through the award of prior custody credit; or (4) by running his federal sentence concurrent with his Iowa state sentence.

## IV.   **Discussion**

The Attorney General, through the BOP, has responsibility for computing and determining the commencement of federal sentences. *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006) (citing *United States v. Wilson*, 503 U.S. 329, 334-35, 112 S.Ct. 1351 (1992)). The Court reviews the BOP's determinations for abuse of the agency's substantial discretion. *Fegans v. United States*, 506 F.3d 1101, 1105 (8th Cir. 2007).

### A.   *Commencement of Sentence*

A federal sentence cannot commence prior to the date of imposition. *Sisemore v. Outlaw*, 363 F.Appx. 424 (8th Cir. 2010) (per curiam) (citing *Coloma v. Holder*, 445 F.3d 1282, 1283-1284 (11th Cir. 2006). A sentence generally commences on the date the defendant is received into custody for transportation to his or her official detention facility. 18 U.S.C. § 3585(a).

The BOP originally commenced Mr. Walker's sentence on October 6, 2011, the date Iowa state authorities released Mr. Walker to USMS custody at the expiration of his state sentence. (#1, p. 20; #5, ¶6; #5-1, p. 16) The BOP has now recalculated Mr. Walker's sentence and the commencement date is August 29, 2011, the date of

6

imposition.[3]  The BOP has now correctly determined the commencement date of Mr. Walker's sentence.

B.    *Nunc Pro Tunc Request*

The BOP has the authority to designate a state facility as the site for a defendant to serve his or her federal sentence.  18 U.S.C. § 3621(b).  If the BOP does not make the designation in advance, it may make the designation through a *nunc pro tunc* order.

Mr. Walker did not explicitly request a *nunc pro tunc* designation, but believes that his numerous administrative appeals should have alerted the BOP to the issue.  (#14, p. 3) Warden Rivera confirmed that he considered a request for *nunc pro tunc* designation, but repeatedly failed to provide basic documentation to support this assertion.  Neither of the BOP's sentence recalculations shows whether or not the BOP granted a *nunc pro tunc* designation.  (#24 and #28)

Iowa state authorities incarcerated Mr. Walker until his October 6, 2011 release to the USMS at the expiration of his state sentence.  (#1, p. 20; #5, ¶6; #5-1, p. 16)  The BOP has now commenced Mr. Walker's sentence starting August 29, 2011.  (#28-1, p. 3) Warden Rivera did not explicitly state that the BOP granted *nunc pro tunc* designation for the time Mr. Walker remained in a state facility between August 29 and October 6, 2011.

---

[3] Warden Rivera asserts that the first recalculation commenced Mr. Walker's sentence on August 29, 2011, the date of imposition.  (#24-2, p. 2)  The computerized printout, however, showed Mr. Walker's sentence computation still began October 6, 2011.  (#24-2, p. 4)  The second recalculation printout changed the commencement date to August 29, 2011.  (#28-1, p. 3)

The outcome, however, is the same.  Mr. Walker's sentence began August 29, 2011,

regardless of an explicit *nunc pro tunc* designation.  Mr. Walker has also received credit

toward his federal sentence for all time he spent in custody.  Accordingly, this issue is

moot.

      C.    *Custody Credit*

A federal prisoner is entitled to prior custody credit for any time spent in official

detention prior to the date the sentence commences, so long as the time was not credited

to another sentence.  18 U.S.C. § 3585(b).  The Attorney General, through the BOP, has

the authority to award credit under section 3585(b).  *United States v. Wilson*, 503 U.S.

329, 333, 112 S.Ct. 1351 (1992).

Mr. Walker's custody began with his arrest on October 28, 2010.  He admits that

he was initially transferred to federal custody on a writ of habeas corpus *ad*

*prosequendum*, meaning that he was in primary state custody.  (#14)  After imposition of

his federal sentence, the USMS returned Mr. Walker to state custody to resume service of

his Iowa state sentence.  (#5-1, p. 16)  After completing his state sentence on October 6,

2011, Iowa authorities transferred Mr. Walker to the USMS.  (#14, p. 2)  Mr. Walker also

admits that he received credit on his Iowa state sentence from the date of his arrest

through the date of his transfer to the USMS.  (#14, p. 3)

Because Mr. Walker received credit on another sentence (his Iowa state sentence),

he would not ordinarily be entitled to custody credit on his federal sentence prior to the

commencement date.  An exception applies, however, when, as here, the federal sentence runs concurrently with the state sentence.

      D.    *Concurrent State and Federal Sentences*

Mr. Walker indicates, correctly, that the district court could have ordered his federal sentence to run concurrently with his then existing state sentence.  But the federal court was silent on this issue, at least initially.  ( #5-1, pp. 18-23)  Under 18 U.S.C. § 3584, the BOP could consider the federal court's silence as an order for consecutive sentences.  See *Fegans v. U.S.*, 506 F.3d 1101, 1104 (8th Cir. 2007) (recognizing a presumption under § 3584(a) regarding federal sentences).

If a defendant starts in state custody, serves his state sentence, then moves to federal custody, the federal government determines whether he will receive credit on his federal sentence for the time served in state custody.  *Setser v. United States*, 132 S. Ct. 1463, 1471 (2012).  Multiple terms of imprisonment imposed at different times, like the federal and state sentences here, generally run consecutively unless the federal court orders the terms to run concurrently.  *Elwell v. Fisher*, 716 F.3d 477, 482 (8th Cir. 2013). The BOP could properly interpret the federal district court's initial silence in this case as requiring consecutive sentences.  *Id*. at 484.  But the sentencing court has now spoken.

The sentencing court's clear intent was "to give Mr. Walker a sentence that gave him credit for time served beginning October 28, 2010."  (#27, p. 3)  This is accomplished by running Mr. Walker's federal sentence concurrently with his state

sentence.  He is also entitled to a prior custody credit exception for all the time credited to

his state sentence under *Kayfez* or *Willis*.  See *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir.

2003) (postconviction petitioner serving concurrent state and federal sentences was

entitled to credit against his federal sentence for all of his pre-sentence incarceration,

even though time had already been credited against state sentence; since petitioner's

sentences were concurrent, crediting only against state sentence would not reduce his

period of actual imprisonment); *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971).

      E.    *Good Conduct Credit*

As noted, Mr. Walker's good conduct time was not an issue at any point of this

proceeding until the BOP's second recalculation.  (#30)  It appears that the BOP has not

had an opportunity to address this good conduct credit issue.  Accordingly, this issue is

not ripe for review.

A petitioner is required to exhaust available administrative remedies before filing a

28 U.S.C. § 2241 petition for writ of habeas corpus.  *United States v. Chappel*, 208 F.3d

1069 (8th Cir. 2000) (citing *United States v. Iversen*, 90 F.3d 1340, 1344 (8th Cir 1996)

and *Kendrick v. Carlson*, 995 F.2d 1440, 1447 (8th Cir. 1993)).  Failure to exhaust does

not deprive the Court of jurisdiction, however, because the exhaustion requirement is

judicially created, not jurisdictional.  *Lueth v. Beach*, 498 F.3d 795, 797 n. 3 (8th Cir.

2007).

Some circuits have indicated that a habeas petition requesting prison credit is not ripe until the BOP makes a final decision on the request.  See *Pierce v. Holder*, 614 F.3d 158, 160 (5th Cir. 2010) (citing various cases regarding credit determinations). Regardless, it is appropriate for the BOP to have an opportunity to address this issue before court intervention.  If Mr. Walker disagrees with the BOP's good conduct credit calculation after the BOP has had an opportunity to address this issue through its administrative remedy process, he may file a 28 U.S.C. § 2241 petition for writ of habeas corpus challenging the good conduct credit calculation.

F.      *Is the Petition Moot?*

To sustain a habeas petition, a petitioner must show a "continuing injury" throughout litigation.  *Spencer v. Kemna*, 523 U.S. 1, 7-8, 118 S.Ct. 978, 983 (1998).  A change in circumstances may cause a petition to become moot because it no longer presents a case or controversy under Article III of the Constitution.  *Id*.  This typically occurs when a petitioner is released from custody during litigation.  This can also occur, however, when the relief requested short of release is granted during litigation.  See *Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008)(§2241 petition moot after BOP granted requested Residential Re-Entry Center placement).

Although Warden Rivera's response to the Court's June 18, 2015 order was unhelpful, and the computerized printout he provided is confusing, it is clear that the BOP

11

has now granted the relief Mr. Walker originally requested.  Warden Rivera's final

response states, in its entirety:

> The Respondent, by and through the United States Attorney for the Eastern
> District of Arkansas, hereby responds to the Court's Order (Doc. 27):
> In response to the Court's June 18, 2015 Order, the Respondent recalculated
> Petitioner's sentence in accordance with USSG § 5G1.3. This recalculation
> resulted in Petitioner's sentence being reduced to 112 months and 20 days.
> This resulted in Petitioner's new projected release date of August 13, 2019.
> See attached Sentry sentence computation.  (#28)

So did the BOP consider Mr. Walker's federal sentence fully concurrent with his

state sentence?  Is it partially concurrent?  Did the BOP grant *nunc pro tunc* designation

to achieve the recalculation?  Did the BOP grant prior custody credit under *Kayfez* or

*Willis*?  The response provided the absolute bare minimum, which fits the pattern in this

case.[4]

---

[4] As Mr. Walker repeatedly notes, completing an appropriate sentence calculation
was not difficult.  Mr. Walker provided more than enough information at the
administrative level for the BOP to follow its own policy and consider a sentence
recalculation in good faith.  That did not happen and Mr. Walker was forced to seek court
intervention.

In response to Mr. Walker's petition, Warden Rivera failed to include relevant
information that Mr. Walker had presented during the administrative process.  (#5)  Even
worse, Warden Rivera's answer gave this Court the false impression that the BOP could
not grant the relief Mr. Walker requested.  (#5)

After omitting relevant information and presenting a questionable legal position,
Warden Rivera then responded to one Court order by sending a somewhat misleading
letter to the sentencing judge.  (#21)  It took multiple orders from this Court, and the
independent intervention of trial counsel and the sentencing judge, for the BOP to finally
do what it should have done during the administrative process.  Ironically, the BOP's
recalculation runs counter to its original legal argument against habeas relief.  (#5 and
#28)

To put it kindly, this proceeding has raised troubling questions about Warden

12

The computerized printout shows that, for whatever reason, the BOP reduced Mr. Walker's sentence from 120 months to 112 months and 20 days.  (#28-1, p. 3)  In addition, the BOP awarded 82 days of prior credit time from October 28, 2010, to January 17, 2011.[5]  When the prior credit time and the sentence reduction are combined, the aggregate time equals the time Mr. Walker spent in custody prior to the commencement of his federal sentence.  This is evidenced by Mr. Walker's new "Expiration Full Term Date" of October 27, 2020.[6]  (#28-1, p. 3)

Despite noted reservations with Warden Rivera's filings, the BOP has now granted Mr. Walker all of the credit time he requested.  Accordingly, his petition is now moot.

## V.   Conclusion

The BOP has now credited Mr. Walker's sentence with all custody time served beginning on his date of arrest, October 28, 2010.  Accordingly, the Judge Baker should DENY Mr. Walker's petition as moot, and DISMISS this case without prejudice.  The District Judge should decline to address Mr. Walker's good conduct credit argument at this time.

---

Rivera's representations to the Court.

[5]  Why did the prior credit time end January 17, 2011?  This date matches only one document in the record.  It is the date the Story County Sheriff's Office signed Mr. Walker's state Jail Credit Certification.  (#5-1, p. 36)  It is not the end date of Mr. Walker's state jail credit, the date of his state conviction, the date of any transfer to federal authorities, or even the date of any federal hearings.

[6] Mr. Walker was arrested on October 28, 2010 and received a 10-year federal sentence.

DATED this 3rd day of June, 2016.

UNITED STATES MAGISTRATE JUDGE